OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of involuntary manslaughter in violation of R.C.2903.04(B), following a plea of "no contest," and sentenced him to four years incarceration. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"First Assignment of Error
 "THE TRIAL COURT ERRED IN IMPOSING A SENTENCE OF FOUR YEARS IMPRISONMENT BASED ON THE INACCURATE BELIEF THAT MR. SHIRK WAS ACTUALLY UNDER A COMMUNITY CONTROL SANCTION AT THE TIME OF THE OFFENSE AT ISSUE.
"Second Assignment of Error
 "THE TRIAL COURT ERRED IN DENYING MR. SHIRK'S MOTION TO SUPPRESS AS REGARDS STATEMENTS REGARDING CONSUMPTION OF ALCOHOL HE MADE TO OFFICERS AT THE SCENE OF THE OFFENSE."
The facts that are relevant to the issues raised on appeal are as follows. On June 20, 1997, while driving on Tremainsville Road in Toledo at approximately 6:00 p.m., appellant struck and killed a pedestrian. On September 24, 1997, appellant was indicted on one count of involuntary manslaughter and one count of aggravated vehicular homicide in connection with the death of Patricia Diehl as a result of the accident. On November 6, 1997, appellant filed a motion to suppress statements he made to police immediately following the accident about his consumption of alcohol earlier in the day. On November 13, 1997, a hearing was held on appellant's motion to suppress and on January 15, 1998, the trial court denied the motion. On January 16, 1998, appellant entered a plea of "no contest" to involuntary manslaughter as alleged in the first count of the indictment. On February 17, 1998, appellant was sentenced.
In his first assignment of error, appellant asserts that his sentence was based in part on inaccurate information that he was under community control at the time the offense was committed. Appellant cites the trial court's statement in its sentencing judgment entry that "* * * the defendant has a prior conviction and was already under community control," which, appellant asserts, shows that the trial court had misinformation that he was under community control on June 20, 1997, when he struck and killed Patricia Diehl.
We do not consider the trial court's statement as cited by appellant to be a positive indication that the court thought appellant was presently under community control when appellant committed the offense and we will not engage in an attempt to read the judge's mind. Nothing in the record indicates that appellant was under community control. We further note appellant's admission in his brief on appeal that "the sentence imposed * * * was within the range allowed by law." Accordingly, upon thorough review of the record of proceedings in the trial court, this court finds that the trial court did not err in imposing sentence and appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the trial court erred by denying his motion to suppress the statements he made to police officers at the scene of the accident. Appellant argues that he was under police custody and that none of the officers informed him of his Miranda rights prior to questioning him as to the circumstances surrounding the accident. Appellant further asserts that the officers were not merely conducting a standard investigation of the accident but were attempting to elicit incriminating information from him.
Appellee responds that, while the officers did question appellant without advising him of his Miranda rights and did obtain incriminating statements, the circumstances in this case amounted to "roadside questioning" following a routine traffic situation and did not constitute the type of custodial interrogation that would require a Miranda warning.
At the suppression hearing, the trial court heard the testimony of several police officers who spoke to appellant that night at the scene. Officer Roberto Garcia, the first officer on the scene, testified that after a few minutes of attending to the victim, who appeared to be lifeless, he approached appellant. Garcia testified that he spoke to appellant as part of his investigation of the accident. He stated that appellant told him the victim had stepped off the curb and into his path. Garcia then asked appellant if he had been drinking and testified that appellant said he had a couple of beers earlier in the day. Garcia further testified that appellant smelled of intoxicants, had glassy eyes and his speech was slurred, all of which are reasons why he asked appellant if he had been drinking. Garcia stated that appellant was not in custody at that time.
Officer Michael Palicki testified that he is an accident investigator and arrived at the scene at approximately 6:30 p.m. Palicki stated that he looked over the accident scene for ten to fifteen minutes and then spoke to appellant for two or three minutes in order to find out what had happened. Appellant approached Palicki as the officer stood by his patrol car and Palicki then asked appellant what had happened. Palicki testified that during the initial questioning appellant indicated he had one beer before driving that night. He stated that he did not talk to appellant after that because the news media had arrived on the scene and "it wasn't the time or the place to continue talking with him."
The Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that: "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." The United States Supreme Court has held that this privilege can only be safeguarded from improper police conduct by excluding any statements from evidence which arise from custodial interrogation by the police without the individual having been informed of his Fifth Amendment privileges. Miranda v. Arizona (1966), 384 U.S. 436, 444. Custodial interrogation is defined as questioning while the individual is under police custody or is otherwise deprived of freedom of action in a significant way. Id. Custody requires "`formal arrest or restraint of freedom of movement of the degree associated with a formal arrest.'" California v. Behler (1983),463 U.S. 1121, 1125, quoting Oregon v. Mathiason (1977),429 U.S. 492, 495. Interrogation requires "express questioning or its functional equivalent" which the police should know is "reasonably likely to elicit an incriminating response. * * *" Rhode Islandv. Innis (1980), 446 U.S. 291, 300-01.
Each case must be reviewed based upon its own facts with the focus upon the perception of the individual questioned.Id., at California v. Behler, supra. Although an individual is not free to leave the scene of an ordinary traffic stop, the United States Supreme Court has held that the type of questioning which occurs at a traffic stop does not involve custodial interrogation or coercive interrogation pressures which would prevent the individual from freely exercising his Fifth Amendment rights. Berkemer v. McCarty (1984), 468 U.S. 420, 437. The same analysis has been applied to accident investigations by the police. State v. Warrell (1987), 41 Ohio App.3d 286.
In the case before us, the two officers asked appellant questions but they spoke to him only briefly. In the case of Officer Palicki, it was appellant who approached the officer. We conclude that, while appellant may not have been free to leave the scene of an accident that had occurred just minutes earlier, this case does not involve the custodial interrogation contemplated by the United States Supreme Court in the Miranda decision. Appellant was only temporarily detained by the police so that a serious accident could be adequately investigated. Accordingly, we find that the trial court did not err by denying appellant's motion to suppress and appellant's second assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGEMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. JUDGE
James R. Sherck, J. JUDGE
Richard W. Knepper, J. JUDGE
CONCUR.